**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott L. Bolzan,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV-13-01033-PHX-NVW<br><br>**ORDER** |

Plaintiff Scott L. Bolzan seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I. BACKGROUND**

 **A. Factual Background**

Plaintiff was born in July 1962. He graduated from college in 1984 and completed flight training in 1994. He worked as an owner of an aviation management and aircraft charter business, professional football player, commercial pilot, mortgage broker, and automobile salesman. In December 2008, Plaintiff slipped, fell, and hit his head. He sustained a cut on his head and reported headache and retrograde amnesia following the

incident. He subsequently reported persisting headaches and continued difficulty remembering events that occurred before the December 2008 fall. Beginning in July 2010, Plaintiff began experiencing seizure-like events, some of which led to falling and sustaining additional injuries. Plaintiff quit driving after July 2010.

Plaintiff co-authored a book with his wife and a writer about his life after the December 2008 head injury. In 2011, Plaintiff and his wife were paid an advance of $85,000 from which they paid $65,000 to the agent and writer. Plaintiff and his wife also participated in a book tour, speaking engagements, and television appearances for which they were compensated. Plaintiff also participated in charitable activities related to the National Football League. In January 2012, Plaintiff testified that when he did not have a headache, he was able help with housework, prepare food, watch television, use the Internet to learn how to do household maintenance and repairs, perform personal care, and manage finances. He can read, write, and use a computer.

### B.     Procedural History

On May 16, 2010, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning December 17, 2008. On January 11, 2012, he appeared with his attorney and testified at a hearing before the ALJ. Plaintiff's wife and a vocational expert also testified. On April 16, 2012, Plaintiff again appeared with his attorney and testified at a supplemental hearing before the ALJ. Plaintiff's wife and a different vocational expert also testified at the supplemental hearing.

On May 2, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On May 20, 2013, Plaintiff sought review by this Court.

## II.    STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court

may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

**III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still

capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through December 31, 2011, and that he engaged in substantial gainful activity after the alleged onset date. If an individual engages in substantial gainful activity, he is not disabled regardless of his physical or mental impairments. Nevertheless, the ALJ proceeded with the five-step analysis to show that the evidence established that Plaintiff was not disabled on other grounds.

At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: amnesia, headaches, and pseudo-seizures. At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that, through the date last insured, Plaintiff:

> had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations; no climbing of ladders, ropes, or scaffolds; needs to avoid all exposure to hazards, including machinery and unprotected heights; and is further limited to simple and unskilled work.

The ALJ further found that, through the date last insured, Plaintiff was unable to perform any past relevant work. At step five, the ALJ concluded that, through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Finding Plaintiff Engaged in Substantial Gainful Activity After the Alleged Onset Date.

An ALJ is not required to make specific findings regarding her determination of whether a claimant has engaged in substantial gainful activity. *Katz v. Sec'y of Health & Human Servs.*, 972 F.2d 290, 293 (9th Cir. 1996). However, the ALJ provided detailed analysis of inconsistent evidence regarding Plaintiff's work after the alleged onset date and application of three tests to determine whether a self-employed individual is engaged in substantial gainful activity. The ALJ found the evidence showed that Plaintiff had substantial gainful activity earnings during at least one year after the alleged onset date and that during the other years he was still engaged in multiple business activities and ventures even though his net earnings for those years was less clear based on the tax information Plaintiff provided.

A claimant who engages in substantial gainful activity is not disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(i). Work activity is substantial if it involves doing significant physical or mental activities, even if it is done on a part-time basis, or for less pay, or with less responsibility than previous work. 20 C.F.R. § 404.1572(a). "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). If a claimant is self-employed, the claimant's work activity is evaluated based on the value of the claimant's work to the business regardless of whether the claimant received an immediate income for his services. 20 C.F.R. § 404.1575(a)(2).

The ALJ found that Plaintiff's work activity satisfied each of three tests for evaluating whether self-employment work was substantial gainful activity. Test One is satisfied if the claimant rendered services significant to the operation of the business and received a substantial income from the business. *Id.* A claimant's services were significant if they constituted more than half the total time required for management of the business. 20 C.F.R. § 404.1575(b)(1). The income received was substantial if it

- 5 -

1  averaged more than certain monetary amounts. 20 C.F.R. § 404.1575(c). Test Two is
2  satisfied if the claimant's work activity was comparable to that of unimpaired individuals
3  in the community who are in the same or similar businesses as their means of livelihood.
4  20 C.F.R. § 404.1575(a)(2). Test Three is satisfied if the claimant's work activity was
5  clearly worth certain monetary amounts when considered in terms of its value to the
6  business or when compared to the salary that an owner would pay to an employee to do
7  the work. *Id.*

8  The ALJ found that Plaintiff was the self-employed owner of an aviation
9  company, collaborated in writing a book that was published, and appeared at several
10 public speaking engagements related to the book, including five television appearances in
11 different cities. The ALJ further found that Plaintiff and his wife received a book
12 advance of $85,000, from which they paid $65,000 to their agent and a third party. The
13 ALJ found that Plaintiff maintained a holding corporation where he placed the proceeds
14 from his book and Plaintiff's tax records showed business earnings, losses, and assets.
15 The ALJ noted that Plaintiff reported to a psychologist that his public relations activities
16 for the National Football League "should pay off handsomely eventually." Plaintiff's tax
17 returns show income sufficient to satisfy Test One and Test Three.

18 Plaintiff's wife testified that in February 2008, before the injury, they sold the
19 charter portion of their aviation company, which included the company's assets, and kept
20 the management portion of the company, which had no assets. Plaintiff testified that his
21 holding corporation was inactive. The record does not show that either company required
22 any management after December 2008 other than what Plaintiff provided, and the time he
23 spent writing and promoting his book easily constituted more than half of the total time
24 required to manage his businesses as required by Test One. Moreover, his earnings and
25 business tax records demonstrate that his work activity was comparable to that of
26 unimpaired business owners and authors as required by Test Two.

27 Plaintiff had the burden of proving he did not engage in substantial work activity
28 after his alleged onset date. He may not complain now that his income tax returns "are

comprised of sets of numbers that do not inform the analysis whether his activities in fact constituted SGA" and no evidence established the worth of his work activities "at exactly the amount representing SGA-level earnings." The ALJ did not err in finding that Plaintiff engaged in substantial work activity after the alleged onset date.

### B. The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

The ALJ provided a thorough analysis of Plaintiff's testimony and other evidence regarding the extent to which Plaintiff's amnesia, headaches, and pseudo-seizures affected his ability to perform work-related activity. Plaintiff testified that he has two types of headaches: (1) pain in the lower back of his head, lasting usually 3–12 hours, which responds to medication after 2–3 hours; and (2) very sharp, sudden pain over his right temple, which often is quickly followed by tunnel vision and a blackout or seizure. Plaintiff does not know whether he has had a seizure unless he is told by an observer or wakes up lying on the floor, but he estimates that he has seizures 5–7 times per month. He reports the first type of headache occurs about four times per week, but may not occur for as long as two weeks, and it may last five days rather than 3–12 hours.

Plaintiff contends that his headaches and seizures disrupt his ability to sustain work on a regular, reliable schedule. He readily admits to being able to perform simple unskilled work and even some types of skilled work when he does not have a headache. But he alleges that his headaches are so frequent and severe, and his seizures so frequent, that he cannot perform regular work activities.

The ALJ identified a great deal of record evidence that contradicted Plaintiff's allegations that his headaches and seizures preclude all work. The ALJ noted that while Plaintiff has alleged medication side effects, the record indicates those effects were mild and would not have interfered with his ability to perform work activities in any significant manner.

The ALJ cited records showing that in the months following the December 17, 2008 injury, Plaintiff resumed driving, appeared alert and oriented, showed adequate attention and concentration, and went to his office a few times, despite claiming to have had severe headaches daily. During the first hearing, Plaintiff testified that for the first three months his headaches were 24 hours a day, seven days a week, and then they tapered off to 24 hours a day, about six days a week. He further testified that for the first six months he did not leave the house except for medical appointments because of his headaches. During the supplemental hearing, Plaintiff testified that for "pretty much the first year" he had headaches 24 hours a day, seven days a week and that he did not leave his house "due to anxiety, fear of not knowing who I was," which resulted from his retrograde amnesia.

In September 2009, Plaintiff reported that his headaches were reduced to one or two per week. In February 2010, he reported that he had not had a headache in two weeks. The ALJ noted that Plaintiff reported in his June 2010 function report that he was able to help with housework, prepare food, watch television, and do yard work when he was on his medication. The ALJ also described other activities Plaintiff reported in his function report, such as personal care, managing finances, going out to dinner weekly, charitable work four hours per month, attending two-hour charity board meetings every

other month, writing two hours per day, and doing Internet research regarding small household repairs.

The ALJ also considered Plaintiff's reports of pseudo-seizures beginning in late July 2010. Because there was no physiological evidence related to the seizures, Plaintiff's psychiatrist concluded that the seizures had a psychological basis. The ALJ noted that even after late July 2010, Plaintiff continued to travel, and reported on December 1, 2011, that he had been on a four-week book tour, had speaking engagements, and had television appearances to discuss his amnesia syndrome. The ALJ also noted that Plaintiff reported in October 2010 that he had gone to California with his wife to get their daughter settled into college. Even though Plaintiff testified that he had to cancel some speaking engagements because of his medical condition, he said he did not cancel any television appearances.

Therefore, substantial evidence supports finding that the ALJ provided specific, clear, and convincing reasons for discrediting Plaintiff's subjective symptom testimony. *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 693 (9th Cir. 2009).

### C.  The ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity.

Plaintiff contends the ALJ erred by failing to include in the residual functional capacity limitations for inability to maintain attention and concentration and for anticipated absences. Plaintiff further contends the ALJ made these errors because she found Plaintiff's description of the intensity, persistence, and limiting effects of his headaches and pseudo-seizures not fully credible. As shown above, the ALJ did not err in finding Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not fully credible.

### D.  The ALJ Did Not Err in Obtaining Vocational Information.

Plaintiff contends the ALJ erred by failing to present hypothetical questions to the vocational expert that included limitations for inability to maintain attention and concentration and for anticipated absences. This contention depends on finding both the

ALJ's credibility and residual functional capacity determinations unsupported by substantial evidence or based on legal error. As previously concluded, the ALJ did not err in either determination.

### E. The ALJ's Consideration of Internet Information Was Harmless.

Plaintiff contends that the ALJ's reliance on information she obtained from a personal search of the Internet and public records "is problematic." Counsel for Plaintiff states he is not aware of whether in January–April 2012 any Social Security Administration policy prohibited the ALJ from considering information obtained through Internet sites unless it had been obtained by the Cooperative Disability Investigations Unit or was submitted by the claimant as evidence, but there was such a policy in effect in August 2013. Defendant concedes that the ALJ's consideration of Exhibits 19E and 20E was error, but contends it does not affect the outcome of the case because substantial evidence supports the ALJ's finding that Plaintiff was not disabled under the Social Security Act without considering Exhibits 19E and 20E.

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111. The claimant must show at least a substantial likelihood of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (ALJ's error of receiving and assigning some weight to ex parte communication did not affect claimant's substantial rights because the ALJ's decision and the record showed the ALJ would have reached the same conclusion without considering the ex parte communication).

As discussed above, substantial evidence unrelated to Exhibits 19E and 20E supports the ALJ's findings that Plaintiff engaged in substantial gainful activity after the alleged onset date, Plaintiff's subjective symptom testimony is not fully credible, and Plaintiff was able to perform simple and unskilled work through the date last insured.

1 Plaintiff has not shown that the ALJ likely would not have reached the same conclusion without considering Exhibits 19E and 20E.

Moreover, the ALJ questioned Plaintiff about Exhibits 19E and 20E during the supplemental hearing and put the exhibits into the record.  Plaintiff was not denied due process because he had opportunity to refute and/or explain the information contained in those exhibits both during the hearing and subsequently.  Even on appeal, Plaintiff does not contend the improper consideration of Exhibits 19E and 20E was prejudicial, only that it violated his due process rights under current Social Security Administration policy and procedure.

Therefore, the ALJ's consideration of information obtained through personal search of the Internet was harmless.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 30th day of September, 2014.

Neil V. Wake
United States District Judge